The next case is United States v. Montalvo. May it please the court, may I take down my mask? Yes, sure. And wear it as my usual bit, thank you. I am Donna Newman, and together with Clara Cowhouse we represent Maizel Montalvo, the appellant in this case. Mr. Montalvo comes before this court seeking this court to vacate his sentence of 20 years. We are not attacking the 10 years presumably that the court imposed under the guidelines for the drug conspiracy, just so that we are clear to begin with. What we are saying is that the overall sentence of 20 years, which was a variance doubling what the court found to be the guideline for the offense of conviction, was a variance that was well in excess and improper based on the factual statements or findings by the district court in its memorandum and opinion. Can I just ask you, so one thing that struck me in both the briefing and from the district court, there's sort of interchangeable use made of departure and variance, even though they're not exactly the same. Is your view that this was, I guess, one, both a departure and a variance, and that it would be improper under either? There's a lot of mixing of the two. I agree with the court as to it's rather ambiguous, but I believe it is our opinion that the court in the end was doing a variance, although his opinion, his written opinion, and the beginning of the sentencing transcript, the sentencing hearing, he speaks about departure. But in any event... I'm sorry, just one more follow-up. Do you agree that there are different standards for the two? Yes, there's no question that the law is clear that they are different, but nonetheless the law is also clear that a variance is not unlimited. In other words, your authority to grant a variance is not unlimited. There are certain boundaries, and we believe that he exceeded those boundaries. And we need to begin with understanding that the plea agreement and the briefings and the court's written opinion all deal with the drug conspiracy. And under either, Kim, which he relied on for the methodology, either for the departure or the variance, or 5K2.21, does not support a departure and doesn't support a variance. And let me explain why. With respect to 5K2.1, it is clear that there, and based on Kim, which, when the commission amended 5K to include 5K2.21, relied on to some extent, said that there needs to be some relationship. And the court, to try that relationship to the drug offense, makes certain factual findings that we say are just not proper based on the record. It must be remembered from Hidalgo's testimony, I believe, but it was certainly in the record, that there was talk of the lottery money that was won by the Camacho brothers. So it was talk about town. And the reason they, all the participants, were anxious to do it that day was the fear that somebody else, some other robbers, would come in and steal the money. So, one, as the court says, it's not relevant conduct. This felony murder is not relevant conduct. But where's the connection to the drugs? So he shoehorns some facts that are certainly not part of the record and are difficult to support. He's not the mastermind. They all meet together. This was not a robbery crew, so selecting the location was obvious. Everybody was going to that location. But if it's a, I mean, my understanding of variance, if this is a variance, as you suggested, ultimately, is that the sentencing court can consider under 3553A any information concerning the background, character, conduct. So is your argument that because the departure, in the world of departure, we carefully track some relatedness, that it becomes substantively unreasonable to give as much weight to the conduct because, as you argue, it's unrelated, as was given here? Is it a substantive unreasonableness argument, or are you saying the procedural aspects of departure bleed into variance in some way? To some extent, both. What I'm trying to say is that if you start with a basis for variance on facts that cannot be supported, in other words, to find that he's doing a Kim or 5K 2.21 analysis, there's no question he makes that very clear and goes through it at some length, but he starts with facts that can't be supported in the record. Even the very fact at the end in which he, in the sentencing transcript, which he says, well, the reason, part of the reason that this is appropriate, these 10 additional years, is because Mr. Montalvo did not come forward knowing that an innocent person had been in jail. Well, let's examine that. If Mr. Montalvo had come forward, first of all, there was no indictment, so there was no obligation to turn himself in. But if he had, that's cooperation. He comes forward, which of course is not obligated. He comes forward. He can only say what he did, which would not exculpate poor Mr. Ortiz, who, by the way, was found guilty because he confessed. So this is a confession by Joshua, I think it's Joshua Ortiz, the man who was in prison for 10 years, because the police, the state police, were overbearing and got a false confession. That has nothing to do with Mr. Montalvo. And he has no, yes? The judge found other conduct by Mr. Montalvo that funneled into the variance. I mean, his role essentially in organizing the robbery where the murders occurred. He told the guys that there was money there. He also, he's a drug dealer and he tells them there are kilo quantities of cocaine in that location. And then they go there and then the murders occur. Well, indeed, the district court did not consider that statement because it was conflicting testimony about what exactly Mr. Montalvo said at that meeting. But we would disagree that he organized it. It was Mr. Ortiz, his friend, who organized it, who recruited, not Mr. Montalvo. And the district court rejected, in fact, when he said it wasn't relevant conduct to the drug conspiracy to which Mr. Montalvo pled, the statement that there were kilos. So what the district court found was based on all the record and all the statements that were said would happen at the meeting, that in fact they went there for lottery money. Which brings us to an interesting point because- What is your view of the conceptual limits, the conceptual out of boundaries of the variance? Well- We know that structurally the factors are informed by 3553. But what's the limiting principle you are urging on us? Well, I think that the limiting principle is that you cannot impose a sentence under a lesser standard preponderance for conduct that had nothing to do with, not related, not based on the conduct for which the offense of conviction and the offense is charged. And the offense for which everybody, that is the government and the defendant in their plea agreement, remember the plea agreement talked only about the drug conspiracy and limited the right to appeal if it was found by the district court to be related to the drug conspiracy. So relevant conduct, excuse me. So the parties had an agreement and understanding and that's what they brought forth to the court. Remember that the 924C that he was charged with in the indictment was based on the court's finding, could never be withheld at trial, could never be sufficient evidence at trial because once the drug conspiracy went out, right, as a basis for the 924C violent conduct, there's no 924C. So that's part of the limitation. We say here that it can't, while you can consider, it says everything. Is everything limited by this very right that it has to have some relationship to the offense of conviction? We understand 5K 2.21. Am I out of time? Okay, sorry. I want to be sure that I understand your position on what the boundaries around variance are. Well, the boundaries to sentence somebody, double their sentence, that's what we say is extensive. So the boundaries have to have some relationship to the offense of conviction. Otherwise, we are- I don't understand what that means. Some relationship. What relationship? Well, we're talking about other conduct that the Hobbs Act could not be charged. They admit. So it's other conduct. It's state conduct. Essentially, if you're talking about murder without having the connection of the violent crime, right? So you're talking about a state. We say that you cannot dip into state charge or state crime simply because you, sitting in a federal district court, hear about that evidence. That's up to the state. And so this extension that this court did for ten years for a crime that was, we say, now, based on its own decision, not a federal crime, that is where the variance. There has to be a limit. It's not- What's the limit? Well, the limit is in every case. I think it has to be fact sensitive. What's the principle? I mean, you essentially argue anecdotally. And if we were to go anywhere with your argument, we need to conceptualize because whatever we say about variance will apply to other cases. So what is your generic definition of a variance that's too much? I just don't understand it. Okay, a variance that is- Too much. Too much. I think it- Involves what? Involves faulty fact finding that cannot be supported in the record. It's a variance that is based on an offense conduct that is essentially not federal, but a state conduct and simply punishes for the fact that the state, what I would call the state offense for our discussion now, the state offense was committed by a preponderance. So we have here a punishment for a crime that essentially is not federal by a preponderance standard. That's too far. Thank you. May it please the court, Monica Richards on behalf of the United States of America. What I'd like to start with is that, as the court has pointed out in a couple different ways in its questioning, that a variance is not tethered necessarily to any specific relatedness or relative conduct obviously went out the window here by the time of sentencing. And so all we're looking at at the time of sentencing is whether or not this court, the district court here, in issuing its sentence undertook a proper consideration of the applicable sentencing factors under 3553A. And as the court said, I noted the question about variance versus departure, but the court was quite clear at 856 when it was imposing the sentence that what it was doing was imposing an upward variance. Court using upward and departure, upward departure, upward variance, we know that that's something that this judge has been sitting on the bench for a long time and was used to different guidelines calculations previously, but what he said here was variance. Can I just ask you, and I hope this doesn't take too much off topic, but if in fact we were analyzing this as a departure, would it be problematic or what would be your response to the idea that there's some deficiency in the relatedness part of this? The idea that 5K2.21 and Kim as well suggested there needs to be a relatedness between the uncharged conduct that's being used and the charged offense and the idea that these, I guess, felony murders were unrelated to the narcotics conspiracy. If we were analyzing this as a departure solely, putting aside variance for the moment, would there be a problem with what the court did here? So I think that's obviously what the court was struggling with the whole time here, and in my brief I tried to call that the construct of Kim. I tried to call that the departure construct because here by the time we get to the sentencing, we're not talking about the departure. He was just trying to find a basis. The judge was just trying to tether it in the scheme of the sentencing world to some, how do I do this? What range do I use? What's an appropriate, what's the appropriate range of movement here? Right. And so it is, I understand, I'm sorry. No, no, I'm sorry. I interrupted you, but it is very murky. I guess then I, as the follow-up to that, I would say to the extent that at least the departure scheme seems to have more bounds on it, and although it's murky and I guess we don't have much case law on it, the district court once kind of went away from like, okay, I'm not going to, except in your characterization, I'm not going to make this a departure. I'm going to go to a variance instead. I guess that makes me that much more interested in the answer to the question that Judge Parker raised before of, okay, are there limits to a variance? What are the bounds of that? Because it has the feel of departure is very kind of unclear and murky, and there are at least limits in that that we can point to, and so once we're not going to do that, I'm going to go to a variance. I can do whatever I want, or what is, I mean, I understand it's based on 3553, but I mean, what are the limits to a variance? I mean, I would like to say there's none, but I'm not going to say that. I think the court. And I'm sorry, just if I can add one more follow-up to that, particularly where what the judge is talking about are factors he's struggled with and arguably rejected as justifying a departure, but I'm going to use these same factors and then support the variance. And I think that's exactly it. I think the judge went a little too far here in terms of his explanation. I think he was trying really hard to come up with something to tether it to in the general, in the world of the sentencing guidelines. Well, what does that suggest? Go ahead and finish your answer to my colleague, or were you finished? I don't know. I'll take another question. So doesn't that suggest there's something like no good deed goes unpunished? If you were trying to assess, you think that a sum upwards movement is appropriate, you're trying to assess what degree that should be, let's do the departure analysis, so that will give me some framework. And that will inform, you know, any variance that I would consider to make sure I don't hit the bounds of substantive unreasonableness. I'm also a little puzzled. I'm a little puzzled by your argument. You didn't fully express the notion, but the district court did say that the discharge conduct and the conduct the murders were facilitated by and therefore related to the drug conspiracy that Mr. Montalvo knew the layout of the apartment and knew about the possibility of kilos and the lottery money and his encouragement and knowledge helped facilitate the murders going forward. That wouldn't be relevant conduct. But I didn't see anything in the case law that suggested that that wouldn't be enough for related conduct. Yeah, I mean, we were stuck with the court's ruling at that moment when we went into the sentencing hearing, so we had that as the law of the case, that it was not going to be deemed relevant conduct. It's not relevant conduct. Right. You're not challenging that. Not now, no. But I think here, because it was, such as the court was, we have six pages of the court struggling and explaining exactly what it was thinking in terms of trying to explain its reason for finding that this was a fair sentence. When it was, it recognized quite clearly that it was a 10-year, 10-year variance, that it was not, you know, the guidelines were 120 to 121 and it went to 240. It did some work here to explain why it was doing that. And so in this case, with such a large variance, that was something that I'm sort of happy to defend on this record, that he did come up with his reasons and explained exactly as the court just outlined, that it was in some sense related, if not relevant conduct, that it was related, that there was some connection between the murders. It quite clearly found that the defendant aided and abetted in the felony murders and made that point in the record at 8 to 9 and again at 57. 8 to 9 is the decision in order and 8 to 57 is its sentencing. So is your position that as long as the judge offers reasons for variance, the sky's the limit? No, but yes. What's the limit? I'll have the same problem that my opponent did in defining that. I think that the statutes and the guidelines are clear that 3553A factors, I mean it's not just limited to the proven charged conduct. I mean that's quite clear. We're not in that realm. We're in the realm of the district court having the ability to consider things for upward and downward movement from the guidelines ranges and 3661 does say there's no limitation on what the court can consider. So the 3553A factors provides some. So this could have theoretically then got a variance to life without parole? In theory, yes. Would I be standing up here trying to defend that? Probably not. What would you say? Why would you say that? Because our requested sentencing wasn't for life without parole. Our requested sentencing was for within the range that was originally negotiated. But would life without parole have been a legal sentence? I mean, statutorily, yes. He was subject to the statute range was always up to life at sentencing. Reasonable, substantively reasonable, I'd have a different effort to make on that. What, by the way, is the difference between,  I hope I said it correctly in my brief, but the departure is something that is a construct that moves the guidelines offense level versus a variance which is something that's not necessarily, that you look at the range and then you go up or down, vary up or down from there because the guidelines aren't mandatory. So why would I, if I were a district judge, why would I ever bother with the departure? I mean, I don't have to do that kind of tedious calculation and whatnot. But what I'm hearing from you is that if I just simply say variance, the sky's the limit. I can do whatever I want. As the court pointed out, this ruling in this case is going to affect other cases, obviously. And so that's the problem. Here we had a large variance, yes. Here the judge worked very hard on the record to explain its basis for that large variance. It tried, as I said, to tether it to something, to arrange, as Chief Judge Livingston pointed out, to something in the departure world to try to explain why it was going as high as it did. It didn't actually even hit as high as it could have if it had been imposing the departure. The departure here, if the relevant conduct was found, it would have been, the defendant would have been at 40, and under the plea agreement it would have been 40 and 1 for the criminal history. So that would have been a range of 292 to 365 if he'd gone with, if he'd found relevant conduct and done a guidelines departure. Here the sentence was 240, which was less than what that is by some 50 months, especially if you consider that it was really 40, by the time of sentencing, they figured out that the criminal history category was 2. So it would have been 40 and 2, which would have been even, I forget what the bottom range for that was, but it would have been higher. And so the 240 as a variance didn't hit the departure level. So I get the concept that the sky's the limit, could it have been life? I understand that that's, but this sentence here was not at the departure level. The court went lower than that, the court went to 240, and again explained its reasons on this record thoroughly for that variance. So if a judge were to do a sky's the limit sentence, is it the government's position that the only check on that would be substantive unreasonableness? My time's up. I wish I could just stop talking, but I'm going to answer the question to say that I think. I'm learning things as you talk. I think that the problem there, Your Honor, is that the variance language would have to be incorporated, something within the 3553A explanation, right? So it would have to be history and characteristics of the defendant, it would have to be deter and protect the public, it would have to be any of those factors, and there would have to be an explanation as there was here to justify, and it would have had to have been related to those reasons. You couldn't just say, you know, for all the offensive reasons, you couldn't say because he's, you know, his skin's purple or his hair's orange. I mean, that wouldn't work. Factors are notably Alaskan, right, plastic ones. So as long as a judge were to check the boxes on that particular provision, do anything she wants, subject to a very deferential, substantive, unreasonableness review. I stick with my prior answer, Your Honor. I think that it would have had to have been, I couldn't stand here and tell the court, you know, considering 3553A factors that were completely, you know, nonsensical or not reasonable. The whole standard here, which reminded myself, is reasonableness and whether or not it was reasonable. And so here, what the judge did and how it explained it was reasonable, and in Your Honor's hypothetical of, you know, something, I don't know, flimsy or whimsical, I'm not sure what other word to use, but if it's not reasonable, then no. That's the standard. Before you sit down, does the record reflect at what point Mr. Montalvo came to the notice of the U.S. Attorney's Office or the DEA or whoever was investigating this? It's in the judge's decision, but it's also in the PSR. It was in 2011. First time. He was arrested in 2011. Yeah. Then they must have been looking at him at some point before 2011. No. Again, Your Honor, I can point most immediately to the spot in the sentencing decision, but it was a controlled buy that was orchestrated. There was information that was obtained that this is by the time Mr. Montalvo had moved to New York City, and there was information about him ferrying cocaine back to Buffalo at that point. I'm just trying – it doesn't – I will tell you it doesn't really directly bear on this case, but I wonder how this man, who had nothing to do with these murders, ended up spending ten years incarcerated. He went to – I do have that information, but it's not – as Your Honor knows, it's not relevant, but it's – there's a Buffalo News article I could point you to, but there was a Buffalo News article recently in March of 2022, if the court wants the non-record explanation, but he overheard information at the funeral, and the gentleman was – had a mental capacity that he suffered from that influenced what he said in that moment to try to save his friends, to protect his friends. So when he did the confession, but there was also, as my colleague pointed out, there was also actions undertaken by the officer involved investigating that were subject to discipline. So that – there was just a recent – I'm sorry, March 2022, Buffalo News. So I'll check it out. If there's no further questions, thank you. Once again, with the court's permission, I'll take that. Thank you very much, Your Honor. We undoubtedly agree that this is a confusing and difficult case. I think we've made that clear in our brief. But what we do say, and I think what everybody is so caught up with, one, the court does specifically say at the end – the district court says at the end it is a variant. And our limits on variants, I think we would, in this case – and I do think, and I even say in Dorvay, also speaks about specific, that here it appears from reading the memo, the decision of memo, and the lengthy discussion in the sentencing proceeding, that the court came to the realization that a departure under 5K2.21 didn't work. And so then it went to a variance. And a variance is not a basis where the departure – it's not, oh, departures don't work here, we're going to go to a variance. Because the variance, we can consider everything and it's more, excuse the word, you know, loosey-goosey as far as the law and what's applicable. I don't think that that's appropriate. I think what's here is that the court should not have gone to this extent with the variance where the factual basis, such as the court pointed out – Are you saying that it's improper to go to a variance, it's improper to use a variance that's not consistent with your departure authority? Well, there's no question generally, and courts do this all the time, having, you know, that I'm in the district court, by analysis. They'll look at a, in fact, defense counsel will, you know, advocate for a variance by analogy. You know, looking at coercion or duress or something, saying, okay, it doesn't fit within the guideline, but we're going – we ask the court by looking at some of the statements. But A, 5K2.21 is a policy statement, number one. And I think so it's not even a guideline that has to be followed. But besides that, here, when we look at here, that – it has to be fact-specific, Your Honor. Such as when the court, based on its findings, said, well, the fact that he had this prior drug relationship with the Camacho brothers gave the other participants a feeling of confidence that he knew what he was saying when he – whatever he talked about, the money would be in the back room. Well, that's not what happened per the record. The record does not support the fact that he told the participants that, well, you can trust me or, you know, I have this prior relationship, whether – and who you believe. Ultimately, the district court found that they didn't go in for the drugs, that it was the lottery money. And so they didn't talk about that. What standard should we review a variance? Well, we have standards. You know, it has to be unreasonably – Substantive unreasonableness? Well, if we talk about substantive – yes, it has to be substantive. Anything else? Well, I think it – and substantive unreasonableness has to be based on facts. That if you – if the factual findings are not supported in the record, which it was not here – he's not the leader, he's not the mastermind, he didn't tell them to go into drugs. All he did, essentially, was drive them. He didn't – yes, he knew they had guns and a bat, but he didn't say go in there. In fact, he said – I'm a little confused because if there was a clear – clearly erroneous finding of fact, you wouldn't have to show substantive unreasonableness. You'd have a procedural error. And substantive unreasonableness is the sentence we've said, shockingly high, shockingly low, unsupportable as a matter of law. That's a broad and, you could say, amorphous standard to some degree, but that's what our case law says. And I have, in my brief, stated and argued for that. But I also would say, in this case, where the basis for the 10 years – basis has to do with findings that I say are just simply not supported by the record, that adds to the substantive unreasonableness. We also argued procedural. I do want to stress again that the – where the court makes much of the fact that, after all, the 924C was dismissed. Under 5K2.21, where it talks about dismiss the – you know, if a – pursuant to a plea agreement, that there is a count dismissed. It's not just that he makes much of that, but there's not much to that because, in fact, as I stated, that count could not have been sustained at trial if it's not related to the drugs. The Hobbs Act was not charged. In the end, what we really had, if you looked at everything, you know, in retrospect, you could say what should have been charged at that time was a conspiracy to commit a Hobbs Act. But, of course, we know that that would now have not been sustained now, you know. And at that time of the sentencing, it wouldn't have been sustained. But what I'm saying is you have to look at the – when you look at a variant, even substantive unreasonable, which shocks – it shocks here because that it was the 10 years for a crime that he's finding by a preponderance. He goes to the Hobbs Act, which is certainly not foreseeable, which is the robbery of the chain, the attempted robbery of the gold chain, which had nothing to do with this case. That's when you say, wait a second, let's say, yes, this is a horrible murder, there's no question, but let's not be blinded on that. We have to look at the entirety of this case, unless there's any other questions. Thank you very much. Thank you both. Thank you both. Interesting case. And we'll take the matter under advisement. Thank you. Thank you.